OPINION
{¶ 1} Defendant-appellant, Libbie Sexton a.k.a. Libbie Gerondale, appeals from the decision of the Warren County Court of Common Pleas granting the appeal of her former employer, plaintiff-appellee, the Warren County Auditor, and reversing the decision of the Ohio Unemployment Compensation Review Commission to award her unemployment benefits. *Page 2 
 {¶ 2} In December 2001, appellant began working for appellee in the Warren County Court as a probation clerk. On July 9, 2004, she was promoted to the position of probation officer. On September 24, 2004, she took an approved leave that would last until November 7, 2004. On September 27, 2004, appellant was demoted to the position of probation clerk. Appellant learned of her demotion on September 29, 2004, by way of a report on the 11:00 p.m. television news and a newspaper article in the Cincinnati Enquirer the next morning.
 {¶ 3} On September 30, 2004, appellant went to the chambers of Warren County Court Administrative Judge James Heath and engaged in a heated argument with him over the reasons for her demotion. At one point during their argument, appellant, referring to her demotion, shouted, "This is fucking bullshit." Several days later, appellant had a similar confrontation with her immediate supervisor, Chief Probation Officer Dick Kilburn, in which she shouted at Kilburn in front of several probation officers and several individuals who were on probation, and "yelled so loudly that the court received a telephone call from the Sheriff's office asking if their assistance was needed." On November 9, 2004, Judge Heath fired appellant upon her return to work after her leave had ended.
 {¶ 4} On November 11, 2004, appellant applied with the Ohio Department of Job and Family Services for unemployment benefits. In response to the ODJFS' request for "Separation Information," Judge Heath listed the following reasons for appellant's discharge: (1) appellant clocked into work overtime on a number of occasions and then either spent the time working on personal business or left the court's premises without working, even though she was being paid overtime; (3) appellant made threats, showed a lack of respect, and used inappropriate language in speaking to the court's administrative judge (Judge Heath himself) and the county's chief probation officer (Kilburn) thereby making "her continued employment impossible"; and (4) her work performance was "very poor."
 {¶ 5} When the ODJFS sent appellant a form asking her to "provide any additional *Page 3 
information that you believe is important about why you were discharged," appellant responded, "Problems that family members have had in the court system, which had nothing to do with me or my employment. And my relationship with [former] Administrative Judge Dallas Powers."
 {¶ 6} The ODJFS denied appellant's initial application for benefits on the basis that she had been discharged with just cause for using profanity and arguing with Judge Heath and her immediate supervisor, Kilburn. Appellant appealed the ODJFS' decision to the Ohio Unemployment Compensation Review Commission.
 {¶ 7} A hearing was held on appellant's appeal in April 2005. Appellant appeared at the hearing with Judge Dallas Powers, a former judge of the Warren County Court, who acted as her attorney. When the review commission's hearing officer asked appellant whether she had clocked in to work 16 times in June 2004, and then used the court's computer to do coursework toward her college degree, she testified that she did not "know if that's correct or not." She admitted she did work on the court's computers from time to time, but insisted she did so with Judge Powers' permission.
 {¶ 8} Appellee asked Kilburn to attend the hearing as its representative. The hearing officer asked Kilburn if appellant had yelled at him in front of several probation officers and persons who were on probation, as Judge Heath had reported, and Kilburn testified that she had. When asked what appellant had yelled at him? Kilburn stated, "to be truthful I couldn't tell you at the time what she said[.]" When asked if he considered appellant's behavior to be appropriate," Kilburn answered, "At the time it wasn't right, you know."
 {¶ 9} When the hearing officer asked Judge Powers if he had any questions for Kilburn, Kilburn announced that he was not going to answer any questions from Judge Powers without having counsel present, stating, among other things, that he had a protection order against Powers. The hearing officer stated he could not make Kilburn testify, but would *Page 4 
"read into" Kilburn's refusal to be questioned by appellant's counsel.
 {¶ 10} On April 18, 2005, the hearing officer issued a decision finding that appellant had been terminated without just cause. Specifically, the hearing officer found that appellant did not violate appellee's overtime policy because she "reasonably relied" on the fact that all of her overtime was approved by either the Warren County Court's then-administrative judge, Judge Powers, or her direct supervisor, Kilburn.
 {¶ 11} The hearing officer further found that while appellant "exercised poor judgment" in using profanity during her September 30, 2004 conversation with Judge Heath and in "rais[ing] her voice" while speaking with Kilburn a few days later, appellee neither reprimanded appellant at the time of either "outburst," nor provided a reasonable explanation for "the over one month delay in [appellant's] discharge following said outbursts."
 {¶ 12} After concluding that appellant's actions did "not represent sufficient fault or misconduct to suspend her unemployment compensation benefits," the hearing officer reversed the denial of unemployment benefits to appellant. Appellee's request for further administrative review was disallowed.
 {¶ 13} Appellee appealed the review commission's decision to the Warren County Court of Common Pleas, which reversed the review commission's decision, after finding that appellant had been fired with just cause and, therefore, was not entitled to receive unemployment benefits. In support, the common pleas court noted that while appellant had claimed credit for an "extraordinary amount of overtime" to prepare "for a single show cause docket," her claim "that some 150 hours of overtime was needed to prepare for this single event defies belief."
 {¶ 14} The common pleas court also noted it was uncontroverted that appellant had used profanity to Judge Heath, and that the record revealed a reasonable explanation for appellee's one-month delay in discharging appellant, namely, that appellant was on leave *Page 5 
from September 24, 2004, to November 7, 2004, and was terminated soon after her leave was over. In addition to finding that appellant was not entitled to unemployment benefits, the common pleas court ordered the review commission to seek the return of those benefits appellant has received.
 {¶ 15} Appellant now appeals from the common pleas court's decision and assigns the following as error:
 {¶ 16} "THE TRIAL COURT IMPROPERLY SUBSTITUTED ITS JUDGMENT FOR THAT OF THE OHIO UNEMPLOYMENT COMPENSATION REVIEW COMMISSION IN FINDING THAT APPELLANT WAS FIRED WITH JUST CAUSE."
 {¶ 17} Appellant raises two arguments under this assignment of error. First, she argues that the common pleas court's decision should be reversed because the court failed to expressly find that the decision of the review commission was "unlawful, unreasonable, or against the manifest weight of the evidence." We disagree with this argument.
 {¶ 18} R.C. 4141.282(H) sets forth a common pleas court's standard of review in appeals taken from a decision of the review commission:
 {¶ 19} "The court shall hear the appeal on the certified record provided by the commission. If the court finds that the decision of the commission was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse, vacate, or modify the decision, or remand the matter to the commission. Otherwise, the court shall affirm the decision of the commission."
 {¶ 20} In this case, while the common pleas court did notexpressly find that the review commission's decision was "unlawful, unreasonable, or against the manifest weight of the evidence," it is nonetheless apparent from the court's decision and other parts of the record that the court implicitly made this finding. For example, at a June 7, 2006 hearing, the judge of the common pleas court stated that it was his understanding that he had to affirm the *Page 6 
review commission's decision unless he made "a finding that it is either unlawful or unreasonable or again[st] the manifest weight of the evidence[.]"
 {¶ 21} Furthermore, in its decision, the common pleas court noted that "[a] Court of Common Pleas may reverse an administrative decision `if it is unlawful, unreasonable or against the manifest weight of the evidence.'" Thus, it is clear from the record and the common pleas court's decision that the court had the proper review standard in mind in deciding this case.
 {¶ 22} Appellant's second and main argument under this assignment of error is that the review commission's decision that she was discharged without just cause was not "unlawful, unreasonable, or against the manifest weight of the evidence," and, therefore, the common pleas court was obligated to affirm, rather than reverse, that decision. We disagree with this argument.
 {¶ 23} R.C. 4141.29(D)(2)(a) provides that an individual is not entitled to receive unemployment benefits if that individual "has been discharged for just cause in connection with the individual's work." "`Traditionally, just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act.'" Irvine v. Unemp. Comp. Bd. of Review
(1985), 19 Ohio St.3d 15, 17, quoting Peyton v. Sun T.V. (1975),44 Ohio App.2d 10, 12.
 {¶ 24} "The [Unemployment Compensation] Act does not exist to protect employees from themselves, but to protect them from economic forces over which they have no control. When an employee is at fault, he is no longer the victim of fortune's whims, but is instead directly responsible for his own predicament. Fault on the employee's part separates him from the Act's intent and the Act's protection. Thus, fault is essential to the unique chemistry of a just cause termination."Tzangas, Plakas Mannos v. Ohio Bur. of Emp. Serv., 73 Ohio St.3d, 694,698, 1995-Ohio-206. *Page 7 
 {¶ 25} "[R]eviewing courts may reverse `just cause' determinations `if they are unlawful, unreasonable, or against the manifest weight of the evidence.'" Id. at 696, quoting Irvine v. Unemp. Comp. Bd. ofReview (1985), 19 Ohio St.3d 15, 17-18. "[W]hile appellate courts are not permitted to make factual findings or to determine the credibility of witnesses, they do have the duty to determine whether the board's decision is supported by the evidence in the record." Tzangas, Plakas Mannos, citing Irvine at 18. "This duty is shared by all reviewing courts, from the first level of review in the common pleas court, through the final appeal in [the Ohio Supreme Court]." Tzangas, Plakas Mannos.
 {¶ 26} While the conclusions of the unemployment compensation review commission "as to the legal import of an essentially undisputed set of facts are entitled to some deference," the question of whether an employee was discharged with just cause is a question of law and "the reviewing court has a duty to reverse the [commission's] decision if it is contrary to law." Lombardo v. Ohio Bur. Of Emp. Serv. (1997),119 Ohio Ap.3d 217, 221.
 {¶ 27} In this case, we agree with the common pleas court's implicit determination that the review commission's decision was unlawful, unreasonable, or against the manifest weight of the evidence. Initially, as the common pleas court noted, there is nothing in the record that stands against appellee's allegation that appellant clocked in to work and then left the court premises to attend to personal business. This allegation provides an independent basis for appellee's decision to discharge her. See former R.C. 4141.29(D)(2)(d) and (f)[1] (dishonesty in connection with work, and knowingly making a false statement with the object of obtaining benefits to which employee is not entitled).
 {¶ 28} We also agree with the common pleas court's determination that the hearing officer erred by not making any finding about the reasonableness of appellant's use of *Page 8 
overtime, and by finding, instead, that appellant had a right to rely on the approval of her overtime by her immediate supervisor, Kilburn, or by the then-administrative judge, Judge Powers. As the common pleas court stated, we reject "the notion that a public employee is entitled to seek payment for work it is unlikely that she performed provided that she has the benefit of a supervisor's cooperation."
 {¶ 29} In this case, the evidence showed that appellant logged over 150 hours of overtime on all but two of the weekends between May 22 and September 4, 2004, ostensibly, to prepare for a single show cause docket set for September 24, 2004. We agree with the common pleas court's conclusion that appellant's representation that these hours were necessary for the work she claimed to have performed "defies belief."
 {¶ 30} Furthermore, when appellant was asked by the hearing officer about Judge Heath's allegation that on 16 separate occasions during June 2004, she clocked into work and used the court's computer to do course work for her college degree, she testified that she did not "know if that's correct or not." Shortly thereafter, appellant testified that she had Judge Powers' permission to do course work while at work. When the hearing officer asked appellant about the statement she had made to ODJFS indicating that her "relationship with Administrative Judge Dallas Powers" was one of the reasons for her discharge, appellant testified that she did not know why she had made that statement.
 {¶ 31} After hearing this testimony, the hearing officer concluded that appellant "reasonably relied" on the approval of her overtime by her immediate supervisor, Kilburn, and Judge Powers. However, the hearing officer never asked appellant to explain the nature of her relationship with Judge Powers. While the hearing officer's reluctance to inquire about this subject may be understandable at first glance, the nature of appellant's relationship with Judge Powers obviously has significant bearing on the reasonableness of appellant's reliance on Judge Powers' approval of her overtime. As to Kilburn's approval of her overtime, we note *Page 9 
that appellant never indicated on any of the Overtime Approval Forms she submitted that she used the overtime to work on her personal course work toward her college degree.
 {¶ 32} At the very least, the foregoing evidence provided a sufficient basis for the common pleas court to remand the matter to the review commission for additional factual findings. See R.C. 4141.282(H). Nevertheless, we conclude that appellant's conduct toward Judge Heath on September 30, 2004, and her immediate supervisor, Kilburn, several days later provided appellee with just cause for discharging her.
 {¶ 33} As the common pleas court noted, it was uncontroverted that appellant entered Judge Heath's chambers on September 30, 2004, and, referring to her demotion, stated, "This is fucking bullshit." A few days later, appellant confronted her immediate supervisor, Kilburn, regarding her demotion. Under questioning from the hearing officer, appellant denied raising her voice or using profanity. The hearing officer did not make an express finding on whether or not appellant used profanity during her confrontation with Kilburn. However, the hearing officer expressly found that appellant had "raised her voice" during this confrontation.
 {¶ 34} Furthermore, the hearing officer characterized the statements appellant made to Judge Heath and the ones she made to Kilburn as being "outbursts," and, Kilburn, under questioning from the hearing officer, acknowledged that appellant "yelled at [him] in front of several individuals on probation as well as several probation officers."
 {¶ 35} If appellant's use of profanity against Judge Heath had stood alone, it may not have been sufficient to constitute just cause for her discharge. For instance, in Lombardo, 119 Ohio App.3d 217, the claimant was discharged after he had used the phrase, "`that's bullshit, * * * that's fucking bullshit," when speaking about a decision regarding his work schedule with his employer's plant manager in the presence of his (claimant's) immediate supervisor. Id. at 219. The claimant's initial application for benefits was denied. *Page 10 
 {¶ 36} However, the Wood County Court of Common Pleas reversed the decision denying claimant unemployment benefits, and theLombardo court affirmed the common pleas court's decision. TheLombardo court stated in pertinent part that claimant's "wordsalone under these circumstances, unconnected to any other act ofdisobedience or insubordination, do not constitute just cause for discharge so as to deprive him of his unemployment compensation benefits." (Emphasis added.) Id. at 222.[2]
 {¶ 37} In this case, appellant's words to Judge Heath do not stand "alone," and were not "unconnected to any other act of disobedience or insubordination" committed by appellant. Id. The record shows that a few days after her outburst against Judge Heath, appellant confronted her immediate supervisor, Kilburn, and shouted at him in front of several probation officers and probationers. Taken together, these two acts of insubordination constituted just cause for appellant's discharge.
 {¶ 38} Furthermore, we agree with the common pleas court's finding that appellee had a reasonable explanation for the delay in discharging appellant following her outbursts against Judge Heath and Kilburn: the record shows that appellant was on approved leave from September 24, 2004, until November 7, 2004. She was discharged within two days of her return to work. There was nothing unreasonable in this delay, and the hearing officer erred by finding this to be sufficient justification for his decision finding that appellant was discharged without just cause.
 {¶ 39} Consequently, the common pleas court did not err in finding that the review commission's decision was unlawful, unreasonable, or against the manifest weight of the evidence, and that appellant was discharged with just cause and, therefore, was not entitled *Page 11 
to unemployment benefits.
 {¶ 40} Appellant's assignment of error is overruled.
 {¶ 41} Judgment affirmed.
WALSH and POWELL, JJ., concur.
[1] These provisions are now contained in R.C. 4141.29(D)(2)(e).
[2] The Lombardo court also identified four factors that courts look at in analyzing whether or not a discharge for use of profanity amounts to a discharge for just cause: "(1) the severity of the language used, (2) whether the language was an isolated incident or part of a pattern of behavior, (3) whether other employees were present, and (4) whether there was provocation for the outburst." Id. at 221. *Page 1